■ ROCKAWAY PENINSULA CORP. et al., Respondents-Appellants, v. STATE OF NEW YORK, Appellant-Respondent. (Claims Nos. 38400, 39996.) — REYNOLDS, J. Appeal and cross appeal from judgments of the Court of Claims awarding the claimant Rockaway Peninsula Corporation (Rockaway) a total of $815,000 and claimant Bargaintown U. S. A. No. 2 Corporation (Bargaintown) $16,000 for their respective interests in certain lands appropriated pursuant to section 30 of the Highway Law. Involved are two separate parcels of land, one located to the east (Claim No. 39996) and the other to the west of the Rockaway Turnpike (Claim No. 38400). The easterly parcel, consisting of 2.25 acres, had been purchased by Rockaway in May, 1957 for $115,000. Since its purchase Rockaway through its affiliate Bargaintown has operated a discount store complex on the premises. On July 18, 1961 the State took virtually all of this parcel. The westerly parcel was acquired by Rockaway for $275,000 in June of 1958. It consisted of roughly 18 acres of marshland bisected by a man-made ditch. From this parcel the State on January 19, 1960 appropriated 4.415 acres and on February 8, 1960 another .972 acre of the ditch. With respect to the direct damages awarded for the land taken the State urges that the record does not support the trial court's finding as to the westerly portion that " The property had been substantially filled before the State appropriated, and what had not been done, had been contracted for, with the owner committed to go ahead." However, we find presented no more than a factual issue as to the status of the filling operation with a great deal depending on the credibility of the witnesses. Similarly there is raised as to both parcels the typical controversy with respect to the valuations reached by the experts but we cannot say that the valuations of either expert could not be accepted by the trial court. Accordingly, since the land valuations assigned were within the range of the testimony, we can find no basis to disturb the trial court's determination in this respect. Much more troublesome is the valuation attributed to the buildings on the easterly portion. Involved are a collection of 2-story buildings: a two-year-old cement block main sales building containing 16,111 square feet; a 25-year-old brick and frame shoe store containing 1,742 square feet; three two-to-four year-old frame or corrugated metal warehouses containing a total of 8,116 square feet; and a four-year-old corrugated metal car port containing 273 square feet. The claimants' appraiser arrived at an estimated annual rental of $45,405 based on an extensive analysis of other leases, which the State asserts are not comparable but which would seem supportable in view of the adjustment made (see *Latham Holding Co.* v. *State of New York*, 16 N Y 2d 41), and an evaluation of income procured and gleaned from claimants' past income tax returns. To this he applied a capitalization rate of 10.04% obtained from the Ellwood tables for a value of $455,000 from which he subtracted his prior land valuation of $186,000 for a residual value of $259,000 for the buildings. The State's appraiser also using the building residual approach but the synthetic or band of investment first process of capitalization estimated an annual net income of the property to be $33,294 and arrived at a total evaluation of $327,100 with a building value of $195,000. The State's appraiser, however, rejected this appraisal method because there were no comparable

leases available to check his estimates against and because allegedly the leases in discount-type operations are fairly speculative in that the lessee has little capital invested in fixtures and if business is bad may just fold his tent and sneak off into the night. Accordingly, he decided that since the main sales structure was only two years old the proper method of valuation was reproduction cost less depreciation by which method he arrived at a valuation for the buildings of $189,500. Clearly, however, the property was not a specialty and thus this method of valuation was obviously erroneous (e.g., *Washburn* v. *State of New York,* 26 A D 2d 845). The trial court, deciding that while neither appraisal could be accepted the building residual technique was the appropriate method of valuation proceeded to assign a rental value based "upon the testimony and its own experience" of $.75 per square foot to the warehouses and $1.75 per square foot to the main sales structure for a total net income of $35,700. Then after discussing the haphazard, inharmonious conglomerate group of buildings involved, the court stated that "a .07 annual return on both the land and improvements was a fair return in this case" and using a 15 year economic life and a 7% annual return employed the Inwood tables to produce a total value of the improvements of $228,600. While, of course, the trier of the facts is not bound by opinion testimony, this does not mean that his findings can be predicated solely and simply on his own subjective judgment without any basis in the evidence (*Matter of City of New York* [*A. & W. Realty Corp.*], 1 N Y 2d 428). Here not only are the several factors considered by the court in arriving at the final amount not supported by the evidence but the use of the Inwood tables, which are based on an annuity concept where the income expected to be derived from the property is constant and level throughout its life, is in direct disagreement with the court's own evaluation that although "the subject itself is a very successful enterprise, it does not yet bear the stamp of stability attached to the more conservative type of successful business establishment." Accordingly, this determination cannot stand and a new trial must be directed with respect to the judgment for Rockaway in Claim No. 39996. However, since there appears to be no dispute as to that portion of the judgement as awards $16,000 to Bargaintown for its loss of certain trade fixtures we see no reason to disturb that award. Finally, the State attacks the award of $177,765 for consequential damages with respect to the westerly portion. In our opinion this figure is clearly excessive on the instant record and a new trial as to this issue must be directed. We cannot accept the State's appraiser's flat statement that there were no consequential damages sustained. If the State's appraiser believes that the benefits conferred by the proposed construction outweigh the damages suffered, he should set forth precise figures as to his estimate of the loss due to the taking and conversely as to the benefits allegedly conferred so that intelligent judicial review is possible. Judgment involving Claim No. 39996 modified, on the law and the facts, so as to direct a new trial with respect to the claim of Rockaway Peninsula Corporation and, as so modified, affirmed, without costs; judgment involving Claim No. 38400 modified, on the law and the facts, so as to direct a new trial with respect to the award of $177,765 as consequential damages and, as so modified, affirmed, without costs. Gibson, P. J., Reynolds, Staley, Jr., and Gabrielli, JJ., concur in memorandum decision by Reynolds, J.; Herlihy, J., concurs in the result. Herlihy, J. (concurring in the result). While I concur with the majority, I would make the following observations with reference to the alleged fill on the westerly parcel of the property where out of approximately 18 acres, the State appropriated on one occasion 4.415 acres and subsequently .972 acre. It appears to me that in arriving at damages, the appraisers were considering the fill as related to the entire tract of 18 acres rather than

to what part, if any, of the appropriated property had been filled prior to the actual taking. The present record does not satisfactorily demonstrate what actually took place and leaves the question of fill as related to the appropriated property in a vacuum. The majority of the court has, however, decided that this is a factual issue and thus would not disturb the trial court's determination,. but inasmuch as a new trial is to be granted as to consequential damages, either side, if so advised, should be entitled to offer additional testimony as to the fill with reference to this parcel [47 Misc 2d 114.]